# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jane Doe | The Gardens for Memory Care at Easton; Priority Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC |

**(b)** County of Residence of First Listed Plaintiff    Northampton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Northampton
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Justin F. Robinette, Esquire
325 Chestnut Street, Suite 800,
Philadelphia, PA 19106, Tel: (610) 212-6649

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e (Title VII), 42 U.S.C. § 12101, et seq. (ADA), and 42 U.S.C. § 1981

Brief description of cause:
Employment discrimination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
09/18/2018

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Redacted. See Plaintiff's Motion to Proceed Anonymously.

Address of Defendant: 500 Washington Street, Easton, PA 18042

Place of Accident, Incident or Transaction: 500 Washington Street, Easton, PA 18042

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [✓]

I certify that, to my knowledge, the within case [ ] is / [ ] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/18/18    *(signature)* Justin F. Robinette    319829
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.* *Federal Question Cases:*

1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [✓] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
     *(Please specify):* _____

*B.* *Diversity Jurisdiction Cases:*

1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Justin F. Robinette, Esquire, counsel of record *or* pro se plaintiff, do hereby certify:

[ ] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[✓] Relief other than monetary damages is sought.

DATE: 9/18/18    *(signature)* Justin F. Robinette    319829
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Jane Doe | : | CIVIL ACTION |
| | : | |
| v. | : | |
| The Gardens for Memory Care at Easton; Priority | : | |
| Healthcare Group; Priority Healthcare Group, | : | NO. |
| LLC; and Maybrook-P Praxis Opco, LLC | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.               (X)


| | | |
|---|---|---|
| 09/18/2018 | Justin F. Robinette, Esq. | Plaintiff, Jane Doe |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 212-6649 | (610) 646-0533 | jrobinette@discrimlawyer.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE,<br><br>                     Plaintiff,<br>     v.<br><br>THE GARDENS FOR MEMORY CARE AT EASTON; PRIORITY HEALTHCARE GROUP; PRIORITY HEALTHCARE GROUP, LLC; and MAYBROOK-P PRAXIS OPCO, LLC,<br><br>                     Defendants. | CASE NO. _____ |

**COMPLAINT**

**PARTIES**

1.      Plaintiff, Jane Doe, is an adult individual who resides at ███████████ ██████████████████████████.

2.      Defendant, The Gardens for Memory Care at Easton, is a nursing home with a principal place of business at 500 Washington Street, Easton PA 18042.  Defendant, The Gardens for Memory Care at Easton, was, at all times relevant hereto, upon information and belief, Plaintiff's employer.

3.      Defendant, Priority Healthcare Group, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a corporate headquarters and/or principal place of business at 1510 Chester Pike, Eddystone, PA 19022.  Defendant, Priority Healthcare Group, was, upon information and belief, Plaintiff's employer, at all times relevant hereto.

4.      Defendant, Priority Healthcare Group, LLC, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a corporate headquarters and/or principal place of business at 1510 Chester Pike, Eddystone, PA 19022.  Defendant, Priority Healthcare Group, LLC, was, upon information and belief, Plaintiff's employer, at all times relevant hereto.

5.      Defendant, Maybrook-P Praxis Opco, LLC, and/or Maybrook-P Praxis OPCO, LLC, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a corporate headquarters and/or principal place of business at 34 Lord Avenue, Lawrence, NY 11559.  Defendant, Maybrook-P Praxis Opco, LLC, and/or Maybrook-P Praxis OPCO, LLC, was, upon information and belief, Plaintiff's employer, at all times relevant hereto.  The nursing home owned and operated by Defendant, Maybrook-P Praxis Opco, LLC, and/or Maybrook-P Praxis OPCO, LLC, where Plaintiff was specifically employed, is located at 500 Washington Street, Easton, PA 18042.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

7.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims, as those claims arise out of the same set of operative facts as the federal claims.

8.      This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set

forth by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310 (1945), and its progeny.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because Defendants reside in and/or conduct business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

10.      At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

11.      Plaintiff has exhausted all administrative remedies.  A Notice of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC") is attached hereto as Exhibit "A," and a letter acknowledging Plaintiff's filing with the City of Easton Human Relations Commission is attached hereto as Exhibit "B."

**COUNT I:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON GENDER IDENTITY/SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

12.      All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

13.      Plaintiff was hired for employment by Defendants at The Gardens for Memory Care at Easton, a nursing home, on or about April/May 2017, as a Certified Nursing Assistant ("CNA").

14.      Plaintiff identifies as a transgender woman of color ("TWOC"), and queer & transgender woman of color ("QTWOC").

3

15.     Plaintiff was subjected to a hostile environment/harassment based on gender identity/sex, which was severe or pervasive enough to alter the conditions of Plaintiff's work environment, and make it more difficult to do the job, to wit:

a.      On one occasion, in or around June 2017, Murtho Last Name Unknown ("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to Plaintiff.  Murtho misgendered Plaintiff even though Plaintiff had specifically stated to Plaintiff's coworkers on multiple occasions previously that Plaintiff was female, that Plaintiff wanted to be referred to by a female name, that Plaintiff wanted to be referred to using only she/her/hers pronouns, and that Plaintiff wanted to be treated consistent with her gender identity, which is female.

b.      Plaintiff heard from co-employee, Latoya LNU, and Plaintiff's other co-employees, throughout the duration of Plaintiff's employment, that co-employee/fellow CNA, Nicole LNU, would regularly comment in an offensive manner about Plaintiff being transgender.  Latoya and Nicole are cisgender.

c.      Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's employment in or around July 2017, that co-employee, Nicole, commented that, "He still had a dick," or words to that effect, referring to Plaintiff.  This occurred despite the fact that Plaintiff had specifically stated to Plaintiff's coworkers on multiple occasions previously that Plaintiff was female, that Plaintiff wanted to be referred to by a female name, that Plaintiff wanted to be referred to using only she/her/hers pronouns, and that Plaintiff wanted to be treated consistent with her gender identity, which is female.

4

d.      During Plaintiff's employment, on a frequent and often daily basis,
Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is cisgender,
misgendered Plaintiff by referring to her by male pronouns and a male name.  Stacy
continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly
with Plaintiff's female pronouns and female name in response to the misgendering.  Stacy
misgendered Plaintiff including in front of Plaintiff's co-employees which, upon
information and belief, also ratified and encouraged the abuse of Plaintiff by Plaintiff's
co-employees.

e.      Throughout the duration of Plaintiff's employment by Defendants,
Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands
of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For
example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff
had previously introduced herself to using a female name and female pronouns.  Plaintiff
felt embarrassed and humiliated in front of the patients because Plaintiff's female
appearance, use of female name, and female pronouns, did not correspond with Plaintiff's
supervisor's use of male name and male pronouns.

f.      Additionally, on a frequent basis throughout the duration of Plaintiff's
employment, the assignment sheet regarding who would be assigned to which patients
would state Plaintiff's male name.  The misgendering on the assignment sheet continued
to occur and went uncorrected even after Plaintiff repeatedly rebuffed the use of a male
name and pronouns, with a female name and pronouns.  Plaintiff even recalls that the
misgendering on the assignment sheet continued to occur and went uncorrected even after

Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

g.    Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

h.    Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

i.    Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

16.    Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

17.    Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

18.    In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.  Plaintiff does not recall being asked to write a statement by Tiffany.  Plaintiff does not know whether an investigation was conducted about the complaint.  Plaintiff was not informed about the results of any investigation by Tiffany.

19.    On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff

6

believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

20.     Plaintiff does not recall that Defendants provided a clear or specific reason for discharging Plaintiff at the time of Plaintiff's discharge.

21.     Nicole, Murtho, Stacy, Connie, and Anna, who are cisgender, were similarly-situated co-employees, who were retained as far as Plaintiff can recall, and were not treated with as much disfavor as was the Plaintiff.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-harassment training; and for Defendants to post notice of the verdict in this matter.

**COUNT II:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON GENDER IDENTITY/SEX IN**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority**
**Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

22.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

23.     Plaintiff was hired for employment by Defendants at The Gardens for Memory Care at Easton, a skilled nursing facility, on or about April/May 2017, as a Certified Nursing Assistant ("CNA").

24.     Plaintiff identifies as a transgender woman of color ("TWOC"), and queer & transgender woman of color ("QTWOC").

25.     Plaintiff was terminated/discharged on account of the fact that Plaintiff is transgender, to wit:

      a.     On one occasion, in or around June 2017, Murtho Last Name Unknown ("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to Plaintiff.

      b.     Plaintiff heard from co-employee, Latoya LNU, and Plaintiff's other co-employees, throughout the duration of Plaintiff's employment, that co-employee/fellow CNA, Nicole LNU, would regularly comment in an offensive manner about Plaintiff being transgender.  Latoya and Nicole are cisgender.

      c.     Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's employment in or around July 2017, that co-employee, Nicole, commented that, "He still had a dick," or words to that effect, referring to Plaintiff.

      d.     During Plaintiff's employment, on a frequent and often daily basis, Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is cisgender, misgendered Plaintiff by referring to her by male pronouns and a male name.  Stacy continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly.

8

e.      Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff had previously introduced herself to using a female name and female pronouns.

f.      Additionally, on a frequent basis throughout the duration of Plaintiff's employment, the assignment sheet regarding who would be assigned to which patients would state Plaintiff's male name.  Plaintiff recalls that the misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

g.      Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

h.      Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

i.      Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

26.    Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

27.     Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

28.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.

29.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

30.     Plaintiff does not recall that Defendants provided a clear or specific reason for discharging Plaintiff at the time of Plaintiff's discharge.

31.     Nicole, Murtho, Stacy, Connie, and Anna, who are cisgender, were similarly-situated co-employees, who were retained as far as Plaintiff can recall.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment

10

policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT III:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF**
**THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority**
**Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

32.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

33.     Plaintiff recalls being misgendered verbally by the Plaintiff's supervisor/manager, Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

34.     Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

35.     Plaintiff rebuffed the misgendering by cisgender supervisor/manager, Stacy, and cisgender co-employee, Nicole, each time or virtually each time including in or around June 2017, July 2017, and August 2017.

36.     Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

37.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.

11

38.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

39.     Plaintiff does not recall that Defendants provided a clear or specific reason for discharging Plaintiff at the time of Plaintiff's discharge.

40.     Nicole, Murtho, Stacy, Connie, and Anna, who are cisgender, were similarly-situated co-employees, who were retained as far as Plaintiff can recall.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

### COUNT IV:
### HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON DISABILITY, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, <u>et seq.</u>
### (Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)

12

41.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

42.    Plaintiff is covered under the Americans with Disabilities Act ("ADA"), as amended, to wit:

    a.    Plaintiff has an actual physical impairment in that Plaintiff has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

    b.    Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Plaintiff's brain neuroanatomy was formed in the womb before birth resulting in Plaintiff's anatomical sex not corresponding with Plaintiff's gender identity.

    c.    Plaintiff was perceived or regarded by Defendants as disabled in that Defendants stereotyped Plaintiff as having a mental impairment and/or not being able to think.  However, being transgender is _not_ a mental disorder.

    d.    Any exclusion of persons who are transgender from the ADA, as amended, is unconstitutional as violating equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution.

    e.    Alternatively, upon information and belief, Plaintiff has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

13

43.     Defendants subjected Plaintiff to a hostile work environment/harassment, which was severe or pervasive enough to alter the conditions of Plaintiff's working environment, and made it more difficult to do the job, in violation of the ADA, to wit:

a.      On one occasion, in or around June 2017, Murtho Last Name Unknown ("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to Plaintiff.

b.      Plaintiff heard from co-employee, Latoya LNU, and Plaintiff's other co-employees, throughout the duration of Plaintiff's employment, that co-employee/fellow CNA, Nicole LNU, would regularly comment in an offensive manner about Plaintiff being transgender.

c.      Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's employment in or around July 2017, that co-employee, Nicole, commented that, "He still had a dick," or words to that effect, referring to Plaintiff.

d.      During Plaintiff's employment, on a frequent and often daily basis, Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is cisgender, misgendered Plaintiff by referring to her by male pronouns and a male name.

e.      Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff had previously introduced herself to using a female name and female pronouns.

14

f.      Additionally, on a frequent basis throughout the duration of Plaintiff's employment, the assignment sheet regarding who would be assigned to which patients would state Plaintiff's male name.  Plaintiff recalls that the misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

g.      Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

h.      Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

i.      Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

44.     Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

45.     Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

46.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.  Plaintiff does not recall being asked

15

to write a statement by Tiffany.  Plaintiff does not know whether an investigation was conducted about the complaint.  Plaintiff was not informed about the results of any investigation by Tiffany.

47.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to provide anti-harassment training; and for Defendants to post notice of the verdict in this matter.

## COUNT V:
### WRONGFUL DISCHARGE/TERMINATION BASED ON DISABILITY, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, <u>et seq.</u>
### (Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority <u>Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)</u>

48.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

49.     Plaintiff is covered under the ADA, as amended, to wit:

a.      Plaintiff has an actual physical impairment in that Plaintiff has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

b.      Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Plaintiff's brain neuroanatomy was formed in the womb before birth resulting in Plaintiff's anatomical sex not corresponding with Plaintiff's gender identity.

c.      Plaintiff was perceived or regarded by Defendants as disabled in that Defendants stereotyped Plaintiff as having a mental impairment and/or not being able to think.  However, being transgender is _not_ a mental disorder.

d.      Any exclusion of persons who are transgender from the ADA, as amended, is unconstitutional as violating equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution.

e.      Alternatively, upon information and belief, Plaintiff has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

50.   Defendants wrongfully discharged/terminated Plaintiff in violation of the ADA based on Plaintiff's actual disability, record of a disability, and/or because Plaintiff was perceived/regarded as disabled, as described below.

17

51.     On one occasion, in or around June 2017, Murtho Last Name Unknown ("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to Plaintiff.

52.     Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's employment in or around July 2017, that co-employee, Nicole, commented that, "He still had a dick," or words to that effect, referring to Plaintiff.

53.     Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

54.     Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

55.     Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

56.     Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

57.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.

58.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was

scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff

was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against

Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses,

commissions, and any promotions Plaintiff would have received; compensatory damages for pain

and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional

distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of

suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment

reference for Plaintiff; to provide anti-discrimination, anti-harassment, and anti-retaliation

training; and for Defendants to post notice of the verdict in this matter.

**COUNT VI:**
**FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE**
**AMERICANS WITH DISABILITIES ACT, AS AMENDED,**
**42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority**
**<u>Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)</u>**

59.      All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

60.      Plaintiff is covered under the ADA, as amended, to wit:

a.      Plaintiff has an actual physical impairment in that Plaintiff has a biological

condition plausibly of physical origin due to brain neuroanatomy, and the formation of

that brain neuroanatomy in the womb, which substantially limits the major life activities

of interacting with others, social functioning, and reproducing.

b.      Any exclusion of persons who are transgender from the ADA, as

amended, is unconstitutional as violating equal protection under the Due Process Clause

of the Fifth Amendment to the United States Constitution.

19

c.      Alternatively, upon information and belief, Plaintiff has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

61.    Defendants failed to accommodate Plaintiff's known disability in violation of the ADA, by failing and/or refusing to make reasonable modifications to existing employment policies and/or procedures, to wit:

a.      On one occasion, in or around June 2017, Murtho Last Name Unknown ("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to Plaintiff.

b.      Plaintiff heard from co-employee, Latoya LNU, and Plaintiff's other co-employees, throughout the duration of Plaintiff's employment, that co-employee/fellow CNA, Nicole LNU, would regularly comment in an offensive manner about Plaintiff being transgender.  Latoya and Nicole are cisgender.

c.      Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's employment in or around July 2017, that co-employee, Nicole, commented that, "He still had a dick," or words to that effect, referring to Plaintiff.

d.      During Plaintiff's employment, on a frequent and often daily basis, Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is cisgender, misgendered Plaintiff by referring to her by male pronouns and a male name.  Stacy continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly.

e. Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job. For example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff had previously introduced herself to using a female name and female pronouns.

f. Additionally, on a frequent basis throughout the duration of Plaintiff's employment, the assignment sheet regarding who would be assigned to which patients would state Plaintiff's male name. Plaintiff recalls that the misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

g. Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

h. Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

i. Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

j. Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

k.      Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

l.      In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.  Plaintiff does not recall being asked to write a statement by Tiffany.  Plaintiff does not know whether an investigation was conducted about the complaint.  Plaintiff was not informed about the results of any investigation by Tiffany.

m.      On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment

policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT VII:**
**RETALIATORY DISCHARGE/TERMINATION FOR REQUESTS FOR REASONABLE ACCOMODATIONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

62.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

63.     Plaintiff is covered under the Americans with Disabilities Act ("ADA"), as amended, to wit:

a.     Plaintiff has an actual physical impairment in that Plaintiff has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

b.     Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Plaintiff's brain neuroanatomy was formed in the womb before birth resulting in Plaintiff's anatomical sex not corresponding with Plaintiff's gender identity.

c.     Plaintiff was perceived or regarded by Defendants as disabled in that Defendants stereotyped Plaintiff as having a mental impairment and/or not being able to think.  However, being transgender is <u>not</u> a mental disorder.

d.      Any exclusion of persons who are transgender from the ADA, as amended, is unconstitutional as violating equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution.

e.      Alternatively, upon information and belief, Plaintiff has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

f.      Alternatively, Plaintiff's requests for reasonable accommodations were made in good faith, and therefore Plaintiff is protected from retaliation even if it is ruled Plaintiff does not have a qualifying disability under the ADA, which Plaintiff does.

64.      Defendants terminated/discharged Plaintiff in retaliation for Plaintiff's requests for reasonable accommodations, to wit:

65.      Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017, despite Plaintiff's previous requests to this supervisor/manager for Plaintiff to be referred to using a female name and female pronouns.

66.      Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017, despite Plaintiff's previous requests to this co-employee for Plaintiff to be referred to using a female name and female pronouns.

67.      Plaintiff rebuffed the misgendering by cisgender supervisor/manager, Stacy, and cisgender co-employee, Nicole, each time or virtually each time including in or around June 2017, July 2017, and August 2017.

24

68.     Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

69.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.

70.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT VIII:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON GENDER**
**IDENTITY/EXPRESSION, IN VIOLATION OF THE CITY OF EASTON NON-**
**DISCRIMINATION ORDINANCE, ORD. NO. 4826, ART. 183, CHAPTER 79, AS**
**AMENDED**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority**
**Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

71.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

72.     Plaintiff was subjected to a hostile environment/harassment based on her gender identity and expression, which is female.  The harassment was severe or pervasive enough to alter the conditions of Plaintiff's work environment, and make it more difficult to do the job, to wit:

a.     On one occasion, in or around June 2017, Murtho Last Name Unknown ("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to Plaintiff.  Murtho misgendered Plaintiff with "he" and "he's" even though Plaintiff had specifically stated to Plaintiff's coworkers on multiple occasions previously that Plaintiff was female, that Plaintiff wanted to be referred to by a female name, that Plaintiff wanted to be referred to using only she/her/hers pronouns, and that Plaintiff wanted to be treated consistent with her gender identity, which is female.

b.     Plaintiff heard from co-employee, Latoya LNU, and Plaintiff's other co-employees, throughout the duration of Plaintiff's employment, that co-employee/fellow CNA, Nicole LNU, would regularly comment in an offensive manner about Plaintiff being transgender.  Latoya and Nicole are cisgender.

26

c.      Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's employment in or around July 2017, that co-employee, Nicole, commented that, "He still had a dick," or words to that effect, referring to Plaintiff.  This occurred despite the fact that Plaintiff had specifically stated to Plaintiff's coworkers on multiple occasions previously that Plaintiff was female, that Plaintiff wanted to be referred to by a female name, that Plaintiff wanted to be referred to using only she/her/hers pronouns, and that Plaintiff wanted to be treated consistent with her gender identity, which is female.

d.      During Plaintiff's employment, on a frequent and often daily basis, Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is cisgender, misgendered Plaintiff by referring to her by male pronouns and a male name.  Stacy continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly with Plaintiff's female pronouns and female name in response to the misgendering.  Stacy misgendered Plaintiff including in front of Plaintiff's co-employees which, upon information and belief, also ratified and encouraged the abuse of Plaintiff by Plaintiff's co-employees.

e.      Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff had previously introduced herself to using a female name and female pronouns.  Plaintiff felt embarrassed and humiliated in front of the patients because Plaintiff's appearance and use of name and pronouns, which was female, did not correspond with Plaintiff's supervisor's use of name and pronouns, which was male.

27

f.      Additionally, on a frequent basis throughout the duration of Plaintiff's employment, the assignment sheet regarding who would be assigned to which patients would state Plaintiff's male name.  The misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff repeatedly rebuffed the use of a male name and pronouns, with a female name and pronouns.  Plaintiff even recalls that the misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

g.      Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

h.      Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

i.      Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

73.    Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

74.    Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

75.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.  Plaintiff does not recall being asked to write a statement by Tiffany.  Plaintiff does not know whether an investigation was conducted about the complaint.  Plaintiff was not informed about the results of any investigation by Tiffany.

76.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

77.     Plaintiff does not recall that Defendants provided a clear or specific reason for discharging Plaintiff at the time of Plaintiff's discharge.

78.     Nicole, Murtho, Stacy, Connie, and Anna, who are cisgender, were similarly-situated co-employees, who were retained as far as Plaintiff can recall, and were not treated with as much disfavor as was the Plaintiff.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment

policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT IX:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON GENDER IDENTITY/EXPRESSION, IN VIOLATION OF THE CITY OF EASTON NON-DISCRIMINATION ORDINANCE, ORD. NO. 4826, ART. 183, CHAPTER 79, AS AMENDED**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

79.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

80.     Plaintiff was terminated/discharged on account of Plaintiff's gender identity and expression, to wit:

a.     On one occasion, in or around June 2017, Murtho Last Name Unknown ("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to Plaintiff.

b.     Plaintiff heard from co-employee, Latoya LNU, and Plaintiff's other co-employees, throughout the duration of Plaintiff's employment, that co-employee/fellow CNA, Nicole LNU, would regularly comment in an offensive manner about Plaintiff being transgender.  Latoya and Nicole are cisgender.

c.     Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's employment in or around July 2017, that co-employee, Nicole, commented that, "He still had a dick," or words to that effect, referring to Plaintiff.

30

d.      During Plaintiff's employment, on a frequent and often daily basis, Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is cisgender, misgendered Plaintiff by referring to her by male pronouns and a male name.  Stacy continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly.

e.      Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff had previously introduced herself to using a female name and female pronouns.

f.      Additionally, on a frequent basis throughout the duration of Plaintiff's employment, the assignment sheet regarding who would be assigned to which patients would state Plaintiff's male name.  Plaintiff recalls that the misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

g.      Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

h.      Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

       i.     Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

81.     Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

82.     Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

83.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.

84.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

85.     Plaintiff does not recall that Defendants provided a clear or specific reason for discharging Plaintiff at the time of Plaintiff's discharge.

86.     Nicole, Murtho, Stacy, Connie, and Anna, who are cisgender, were similarly-situated co-employees, who were retained as far as Plaintiff can recall.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain

and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional

distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of

suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment

reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment

policy which specifically covers gender identity and expression, if lacking; to provide anti-

discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of

the verdict in this matter.

## COUNT X:
### RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE CITY OF EASTON NON-DISCRIMINATION ORDINANCE, ORD. NO. 4826, ART. 183, CHAPTER 79, AS AMENDED
### (Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)

87.     All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

88.     Plaintiff recalls being misgendered verbally by the Plaintiff's supervisor/manager,

Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often

daily basis, including in June, July, and August 2017.

89.     Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and

often daily basis, including in June, July, and August 2017.

90.     Plaintiff rebuffed the misgendering by cisgender supervisor/manager, Stacy, and

cisgender co-employee, Nicole, each time or virtually each time including in or around June

2017, July 2017, and August 2017.

91.     Plaintiff corrected the use of a male name in or around June 2017, July 2017, and

August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote

Plaintiff's female name.

92.     In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.

93.     On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

94.     Plaintiff does not recall that Defendants provided a clear or specific reason for discharging Plaintiff at the time of Plaintiff's discharge.

95.     Nicole, Murtho, Stacy, Connie, and Anna, who are cisgender, were similarly-situated co-employees, who were retained as far as Plaintiff can recall.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT XI:**
**FAILURE-TO-ACCOMMODATE GENDER IDENTITY/EXPRESSION IN VIOLATION**
**OF THE CITY OF EASTON NON-DISCRIMINATION ORDINANCE, ORD. NO. 4826,**
**ART. 183, CHAPTER 79, AS AMENDED**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority**
**Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

96.     All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

97.     Defendants failed to accommodate Plaintiff's gender identity and expression,

which was known, by failing and/or refusing to make reasonable accommodations and/or

modifications to existing employment policies and/or procedures, to permit Plaintiff to be treated

consistent with her gender identity, to wit:

        a.      On one occasion, in or around June 2017, Murtho Last Name Unknown

("LNU"), who is cisgender, commented to another co-worker, "He's going to have to ask

for forgiveness if he doesn't want to go to Hell," or words to that effect, referring to

Plaintiff.

        b.      Plaintiff heard from co-employee, Latoya LNU, and Plaintiff's other co-

employees, throughout the duration of Plaintiff's employment, that co-employee/fellow

CNA, Nicole LNU, would regularly comment in an offensive manner about Plaintiff

being transgender.

        c.      Plaintiff heard from co-employee, Latoya, toward the end of Plaintiff's

employment in or around July 2017, that co-employee, Nicole, commented that, "He still

had a dick," or words to that effect, referring to Plaintiff.

        d.      During Plaintiff's employment, on a frequent and often daily basis,

Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is cisgender,

misgendered Plaintiff by referring to her by male pronouns and a male name.  Stacy

35

continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly.

e.      Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff had previously introduced herself to using a female name and female pronouns.

f.      Additionally, on a frequent basis throughout the duration of Plaintiff's employment, the assignment sheet regarding who would be assigned to which patients would state Plaintiff's male name.  Plaintiff recalls that the misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

g.      Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

h.      Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

i.      Plaintiff recalls being misgendered by co-employee, Nicole, on a frequent and often daily basis, including in June, July, and August 2017.

j.      Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

k.      Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

l.      In or around June 2017, Plaintiff recalls lodging a formal internal complaint to Tiffany LNU, Human Resources, about the comment, "He's going to have to ask for forgiveness if he doesn't want to go to Hell" by co-employee, Murtho.  Plaintiff does not recall being asked to write a statement by Tiffany.  Plaintiff does not know whether an investigation was conducted about the complaint.  Plaintiff was not informed about the results of any investigation by Tiffany.

m.      On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, and the Head Administrator, Steve LNU, that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of

37

suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

## COUNT XII:
## HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

98.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

99.     Plaintiff was subjected to a hostile work environment/harassment on account of the fact that Plaintiff is a transgender woman of color ("TWOC"), and/or queer & transgender woman of color ("QTWOC"), which was severe or pervasive enough to alter the conditions of the work environment, and made it more difficult to do the job, to wit:

a.      During Plaintiff's employment, on a frequent and often daily basis, Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is White/Caucasian, and cisgender, misgendered Plaintiff by referring to her by male pronouns and a male name. Stacy continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly.

b.      Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For

example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff

had previously introduced herself to using a female name and female pronouns.

   c.       Additionally, on a frequent basis throughout the duration of Plaintiff's

employment, the assignment sheet regarding who would be assigned to which patients

would state Plaintiff's male name.  Plaintiff recalls that the misgendering on the

assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed

the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male

name, and writing Plaintiff's female name.

   d.       Plaintiff recalls that, throughout the duration of Plaintiff's employment, on

a frequent basis, incident reports that would be routinely prepared by the Charge Nurse,

Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider

to be included in the report.

   e.       Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy,

including with a male name, and male pronouns, on a frequent and often daily basis,

including in June, July, and August 2017.

100.    Plaintiff rebuffed the misgendering each time or virtually each time including in

or around June 2017, July 2017, and August 2017.

101.    Plaintiff corrected the use of a male name in or around June 2017, July 2017, and

August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote

Plaintiff's female name.

102.    On or about August/September 2017, Plaintiff complained to the Director of

Nursing ("DON"), Name Unknown, who is White/Caucasian; and the Head Administrator, Steve

LNU, who is White/Caucasian; that Plaintiff believed she was being discriminated against in the

facility because she was transgender, or words to that effect. Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch. However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

103.    Connie and Anna are White/Caucasian, biological sisters/related, cisgender, and were similarly-situated co-employees who were retained as far as Plaintiff can recall.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to provide anti-harassment training; and for Defendants to post notice of the verdict in this matter.

**COUNT XIV:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON RACE IN VIOLATION OF**
**42 U.S.C. § 1981**
**(Plaintiff, Jane Doe v. Defendants, The Gardens for Memory Care at Easton; Priority**
**Healthcare Group; Priority Healthcare Group, LLC; and Maybrook-P Praxis Opco, LLC)**

104.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

105.    Plaintiff was terminated/discharged on account of the fact that Plaintiff is a transgender woman of color ("TWOC"), and/or queer & transgender woman of color ("QTWOC"), to wit:

106.     During Plaintiff's employment, on a frequent and often daily basis, Plaintiff's supervisor/manager, Charge Nurse, Stacy LNU, who is White/Caucasian, and cisgender, misgendered Plaintiff by referring to her by male pronouns and a male name.  Stacy continued misgendering Plaintiff even after Plaintiff rebuffed and corrected Stacy directly.

107.     Throughout the duration of Plaintiff's employment by Defendants, Plaintiff was forced to run a gamut of abusive misgendering and harassment at the hands of the Charge Nurse, Stacy, which often had a direct impact on Plaintiff's job.  For example, Stacy would frequently misgender Plaintiff in front of patients who Plaintiff had previously introduced herself to using a female name and female pronouns.

108.     Additionally, on a frequent basis throughout the duration of Plaintiff's employment, the assignment sheet regarding who would be assigned to which patients would state Plaintiff's male name.  Plaintiff recalls that the misgendering on the assignment sheet continued to occur and went uncorrected even after Plaintiff rebuffed the misgendering on the assignment sheet by repeatedly striking through Plaintiff's male name, and writing Plaintiff's female name.

109.     Plaintiff recalls that, throughout the duration of Plaintiff's employment, on a frequent basis, incident reports that would be routinely prepared by the Charge Nurse, Stacy, would identify Plaintiff's male name and male pronouns if Plaintiff was a provider to be included in the report.

110.     Plaintiff recalls being misgendered verbally by the Charge Nurse, Stacy, including with a male name, and male pronouns, on a frequent and often daily basis, including in June, July, and August 2017.

111.    Plaintiff rebuffed the misgendering each time or virtually each time including in or around June 2017, July 2017, and August 2017.

112.    Plaintiff corrected the use of a male name in or around June 2017, July 2017, and August 2017, when Plaintiff crossed out Plaintiff's male name on the assignment sheet and wrote Plaintiff's female name.

113.    On or about August/September 2017, Plaintiff complained to the Director of Nursing ("DON"), Name Unknown, who is White/Caucasian; and the Head Administrator, Steve LNU, who is White/Caucasian; that Plaintiff believed she was being discriminated against in the facility because she was transgender, or words to that effect.  Plaintiff was scheduled to work a double for that day, and therefore was scheduled to return to work after lunch.  However, after lunch before Plaintiff returned, Plaintiff was asked by the DON for her badge and keys and instructed that Plaintiff was terminated.

114.    Connie and Anna are White/Caucasian, biological sisters/related, cisgender, and were similarly-situated co-employees who were retained as far as Plaintiff can recall.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; and for Defendants to post notice of the verdict in this matter.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

DATED: 9/18/18

JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
325 Chestnut Street
Constitution Place
Suite 800
Philadelphia, PA 19106-2615
Tel:  (610) 212-6649
Fax:  (610) 646-0533
E-mail:  jrobinette@discrimlawyer.com

*Attorney for Plaintiff, Jane Doe*

# EXHIBIT "A"

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | | From: | **Philadelphia District Office** |
|---|---|---|---|
| | **REDACTED** | | **801 Market Street** |
| | | | **Suite 1300** |
| | | | **Philadelphia, PA 19107** |

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2018-03333** | Legal Unit, **Legal Technician** | **(215) 440-2828** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Jamie R. Williamson*

**Jamie R. Williamson,**
**District Director**

6/21/18

(Date Mailed)

Enclosures(s)

cc:     **Human Resource Manager**
        **GARDENS FOR MEMORY CARE**
        **500 Washington St**
        **Easton, PA 18042**

        **Justin Robinette**
        **JUSTIN ROBINETTE ESQ**
        **325 Chestnut St, Ste 800**
        **Philadelphia, PA 19106**

# EXHIBIT "B"



# CITY OF EASTON

## PENNSYLVANIA

Office of City Clerk

May 2, 2018

Justin F. Robinette, Esquire
325 Chestnut Street
Constitution Place
Suite 800
Philadelphia, Pa. 19106

Re: **REDACTED** v. Maybrook-P Praxis Opco, LLC d/b/a The Garden for Memory Care at Easton

Dear Attorney Robinette:

This is to inform you that the Human Relations Commission has never been empaneled and has no members.

Please forward your complaint to the Pennsylvania Human Relations Commission at the following address.

Pennsylvania Human Relations Commission
Philadelphia Regional Office
110 N. 8th Street
Suite 501
Philadelphia Pa., 19107

Respectfully,

Thomas A. Hess, City Clerk
City of Easton
123 S. Third Street
Easton, Pa. 18042
610-250-6731
thess@easton-pa.gov